# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELIPE GARCIA ROSALES,<br><br>                      Plaintiff,<br>  vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>                      Defendant. | CASE NO. 09cv2222 DMS (PCL)<br><br>**ORDER (1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND (2) DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>[Docket Nos. 14, 15] |

     Plaintiff Felipe Garcia Rosales ("Plaintiff") moves for reversal of Defendant's decision to deny him disability benefits. Defendant Michael J. Astrue, in his capacity as Commissioner of the Social Security Administration, opposes Plaintiff's motion and cross-moves for summary judgment. Plaintiff filed an opposition to Defendant's motion. Neither side filed reply briefs. In his motion, Plaintiff argues the Administrative Law Judge ("ALJ") erred in his analysis of Plaintiff's residual functional capacity ("RFC") and past relevant work, and that with the proper RFC, Plaintiff cannot perform the jobs identified by the ALJ. For the reasons discussed below, the Court grants Plaintiff's motion for summary judgment, and denies Defendant's cross-motion for summary judgment.

## I.
## BACKGROUND

     Plaintiff is a 56-year old male with a sixth grade education. (Administrative Record ("AR") at 51.) On November 6, 2006, Plaintiff filed an application for disability insurance benefits alleging

1  a disability onset date of April 26, 2005. (*Id.* at 107.) Plaintiff alleged he was disabled due to back
2  and head injury, migraines and memory problems. (*Id.* at 121.) Plaintiff's claim was denied initially,
3  (*id.* at 50), and upon reconsideration. (*Id.* at 74-79.)

4  Plaintiff thereafter filed a request for hearing by an ALJ. (*Id.* at 81.) ALJ Norman R. Buls
5  held a hearing on May 8, 2008. (*Id.* at 27) Attorney Paul Johnson represented Plaintiff at the hearing.
6  The ALJ heard testimony from Plaintiff, and concluded the hearing by sending Plaintiff out for an
7  orthopedic consultative examination. (*Id.* at 46-47.)

8  Thomas A. Schweller, M.D. performed that examination on July 1, 2008. (*Id.* at 316.) Dr.
9  Schweller had previously examined Plaintiff on February 27, 2007, at the request of the Department
10 of Social Services ("Department"). (*Id.* at 269.) After his first examination of Plaintiff, Dr.
11 Schweller's opinion of Plaintiff's functional capacity was as follows:

> This gentleman would be able to stand and walk for two hours out of an eight-hour [sic] and sit for six hours out of an eight-hour day. He would be able to lift 20 pounds occasionally and 10 pounds frequently, with occasional limits in bending, stooping, and squatting. He would have no kneeling or crawling limitations. He should avoid above-eye-level reaching and repeated push/pull with the right upper extremity. He does not absolutely require an assistive device for ambulation but should avoid unprotected heights and exposure to moving machinery.

16 (*Id.* at 271.) After Dr. Schweller's second examination, his opinion was as follows:

> This gentleman would be able to sit, stand, and walk for six hours out of an eight-hour day. He would be able to lift 20 pounds occasionally and 10 pounds frequently, with occasional limits in bending, stooping, and squatting. He would have no kneeling or crawling limitations. He should avoid above-eye-level reaching and repeated push/pull with both upper extremities, but would have no upper extremity fine or gross manipulation limits. He does not require an assistive device for ambulation.

21 (*Id.* at 318.)

22 The Department also referred Plaintiff to Colette Valette, Ph.D. for a psychological
23 consultation. (*Id.* at 139.) Dr. Valette examined Plaintiff on February 11, 2007, after which she
24 stated: "It is estimated that the claimant is intellectually functioning in the low average range. Rule
25 out Cognitive Disorder, NOS. Dysthymia was apparent. An appropriate specialist needs to comment
26 on the claimant's physical functioning." (*Id.* at 264.) Dr. Valette opined that Plaintiff had no
27 limitations in his ability to sustain an ordinary routine without sustained supervision, to complete
28 simple tasks, and to avoid normal hazards, slight limitations in his ability to socially interact with

others at an age-appropriate level, mild limitations in his ability to complete detailed tasks, and moderate limitations in his ability to understand instructions, complete complex tasks, and to concentrate for at least two-hour increments at a time. (*Id.* at 265.)

On January 8, 2009, ALJ Buls issued a written decision finding Plaintiff not disabled. (*Id.* at 18-24.) Plaintiff filed a request for review of that decision, (*id.* at 10), which the Appeals Council denied on June 1, 2009. (*Id.* at 6-8.) Plaintiff filed the present case on October 8, 2009.

## II.

## DISCUSSION

Plaintiff argues the ALJ erred in his analysis of Plaintiff's past relevant work and RFC. Plaintiff asserts these errors warrant reversal and remand for an award of benefits. Defendant disputes whether there was any error, and asserts that even if there was, Plaintiff's case should be remanded for further proceedings, not an award of benefits.

**A.  Legal Standard**

Under the Social Security Act, "disability" is defined as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 423(d)(1)(A). The impairment must be so severe that the claimant "is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work." 42 U.S.C. § 423(d)(2)(A). In addition, the impairment must result "from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory techniques." 42 U.S.C. § 423(d)(3).

A court cannot set aside a denial of benefits unless the Commissioner's findings are based upon legal error or are not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986); *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995).

1  It is more than a scintilla but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119
2  n. 10 (9th Cir. 1975).

3       To determine whether substantial evidence exists to support the ALJ's decision, a court
4  reviews the record as a whole, not just the evidence supporting the decision of the ALJ. *Walker v.*
5  *Matthews*, 546 F.2d 814, 818 (9th Cir. 1976). A court may not affirm the Commissioner's decision
6  simply by isolating a specific quantum of supporting evidence. *Hammock v. Bowen*, 879 F.2d 498,
7  501 (9th Cir. 1989). In short, a court must weigh the evidence that supports the Commissioner's
8  conclusions and that which does not. *Martinez*, 807 F.2d at 772.

9       If there is substantial evidence to support the decision of the ALJ, the decision must be upheld
10  even when there is evidence on the other side, *Hall v. Secretary*, 602 F.2d 1372, 1374 (9th Cir. 1979),
11  and even when the evidence is susceptible to more than one rational interpretation. *Gallant v.*
12  *Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). If supported by substantial evidence, the findings of
13  the Commissioner as to any fact will be conclusive. 42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d
14  710, 712 (9th Cir. 1981).

15  **B.     Analysis of RFC**

16       Plaintiff's first argument in this case is that the ALJ erred in determining Plaintiff's RFC.
17  Specifically, he asserts (1) the ALJ misinterpreted Dr. Schweller's opinion, (2) the ALJ's finding that
18  Plaintiff's mental impairment was "non-severe" was erroneous and (3) the ALJ failed to provide
19  specific, clear and convincing reasons for rejecting Plaintiff's testimony. Defendant disputes each of
20  these arguments.

21       1.     <u>Dr. Schweller's Opinion</u>

22       Dr. Schweller examined Plaintiff on two separate occasions. The first examination took place
23  on February 27, 2007. (*See* AR at 269.) During that exam, Dr. Schweller reviewed the history of
24  Plaintiff's recent injury, and Plaintiff's past medical and social history. (*Id.* at 269-70.) Dr. Schweller
25  also conducted a physical exam. (*Id.* at 270.) Dr. Schweller's impression was that Plaintiff had (1)
26  cervical strain, (2) lumbar sprain with lumbar disc disease, (3) right shoulder dislocation with surgery
27  and partial ankylosis, and (4) history of cirrhosis with probable underlying mild alcoholic neuropathy.
28  (*Id.* at 271.) Dr. Schweller's assessment of Plaintiff's RFC was as follows:

> This gentleman would be able to stand and walk for two hours out of an eight-hour [sic] and sit for six hours out of an eight-hour day. He would be able to lift 20 pounds occasionally and 10 pounds frequently, with occasional limits in bending, stooping, and squatting. He would have no kneeling or crawling limitations. He should avoid above-eye-level reaching and repeated push/pull with the right upper extremity. He does not absolutely require an assistive device for ambulation but should avoid unprotected heights and exposure to moving machinery.

(*Id.*)

Dr. Schweller's second examination of Plaintiff took place on July 1, 2008, after the hearing before the ALJ. (*Id.* at 316.) Dr. Schweller again reviewed Plaintiff's medical and social history and conducted a physical exam. (*Id.* at 316-18.) His impression after the second exam was that Plaintiff had (1) musculoligamentous sprain of the lumbar spine, with lumbar disc disease and (2) bilateral shoulder sprains, with partial ankylosis. (*Id.* at 318.) Dr. Schweller's assessment of Plaintiff's RFC after the second exam was as follows:

> This gentleman would be able to sit, stand, and walk for six hours out of an eight-hour day. He would be able to lift 20 pounds occasionally and 10 pounds frequently, with occasional limits in bending, stooping, and squatting. He would have no kneeling or crawling limitations. He should avoid above-eye-level reaching and repeated push/pull with both upper extremities, but would have no upper extremity fine or gross manipulation limits. He does not require an assistive device for ambulation.

(*Id.*)

The ALJ adopted Dr. Schweller's second opinion of Plaintiff's RFC in reaching his opinion that Plaintiff is not disabled. (*Id.* at 21-23.) Plaintiff does not fault the ALJ for doing so, but he argues that Dr. Schweller found that Plaintiff was only able to stand for two hours out of an eight-hour workday, not the six provided for by the ALJ. However, the Court is not persuaded.

In his first report, Dr. Schweller stated that Plaintiff "would be able to stand and walk for two hours out of an eight-hour [sic] and sit for six hours out of an eight-hour day." (*Id.* at 271.) The Court reads this statement to mean that Plaintiff could stand for two hours out of an eight-hour day, walk for two hours out of an eight-hour day, and sit for six hours out of an eight-hour day. In other words, it sets out the hourly limitations on each activity individually. Plaintiff's interpretation of Dr. Schweller's first report is consistent with this understanding, (*see* Pl.'s Mot. at 6) (stating Dr. Schweller limited Plaintiff to standing for two hours during an eight-hour day), but his interpretation of Dr. Schweller's second report is not. In his second report, Dr. Schweller stated Plaintiff "would

1 be able to sit, stand, and walk for six hours out of an eight-hour day." (AR at 318.) Instead of treating
2 the hourly limitations of the second report individually, Plaintiff takes the total number of hours listed
3 (six) and divides that by the number of activities (three), and concludes that Dr. Schweller found
4 Plaintiff could perform each activity for two hours per eight-hour day. Under this reading of Dr.
5 Schweller's first report, however, Plaintiff would only be able to stand for one hour out of an eight-
6 hour day, not two hours, as Plaintiff contends. This internal inconsistency dooms Plaintiff's
7 argument.[1]

        2.      Mental Impairment

9       Next, Plaintiff asserts the ALJ's finding that Plaintiff had a "non-severe" mental impairment
10 lacks evidentiary support. In essence, Plaintiff argues the ALJ failed to address the opinion of Dr.
11 Valette, which was error warranting remand and an award of benefits.

12       Dr. Valette examined Plaintiff at Defendant's request, and her impression was that Plaintiff
13 "is intellectually functioning in the low average range. Rule out Cognitive Disorder, NOS.
14 Dysthymia was apparent." (AR at 261-65.) Dr. Valette found Plaintiff had moderate limitations in
15 his ability to understand instructions, to complete complex tasks and to concentrate for at least two-
16 hour increments at a time. (*Id.* at 265.) Defendant does not dispute that the ALJ did not address Dr.
17 Valette's findings in his opinion, nor does he address whether this was error. Case law, however,
18 supports a finding that the ALJ's failure to address Dr. Valette's opinion was erroneous. *See Ramon*
19 *v. Astrue*, 610 F.Supp.2d 1078, 1083 (C.D. Cal. 2009) (citations omitted) (holding ALJ committed
20 "clear legal error" when he failed to explicitly address an examining physician's opinion).

21       In light of this error, the Court must remand Plaintiff's case. However, before deciding
22 whether to remand for an award of benefits or for further proceedings, the Court will address
23 Plaintiff's other arguments.

24 / / /
25 / / /
26

---

27     [1] Even without the inconsistency, Plaintiff's argument would not warrant a reversal or remand of the ALJ's decision because it amounts to no more than a dispute about the ALJ's interpretation of
28 the evidence, and "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

### 3. Plaintiff's Testimony

Plaintiff's final argument surrounding the ALJ's assessment of his RFC is that the ALJ failed to provide specific, clear and convincing reasons for rejecting Plaintiff's testimony. "To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*)). If the claimant satisfies this first element, "and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.* at 1036 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

Here, the ALJ found that Plaintiff had met the first element. (*See* AR at 22) ("After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]") However, he rejected Plaintiff's credibility for three reasons. (*Id.*) First, he found that Plaintiff "failed to provide sufficient evidence to support the severity and intensity of the symptoms and limitations alleged in this case." (*Id.*) Specifically, the ALJ cited the results of Plaintiff's MRI, EMG and nerve conduction studies to refute Plaintiff's complaints about his back. (*Id.*) The MRI revealed "only mild diffuse cortical atrophy in the thoracic spine; mild stenosis found in the cervical spine; and the claimant has only slight to moderate pain in his back, shoulder, and right leg." (*Id.*) The EMG and nerve conduction studies were "reported as normal." (*Id.*) This evidence serves as a sufficient basis for rejecting Plaintiff's subjective complaints about his back pain. *See Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (finding inconsistencies between plaintiff's subjective complaints and normal laboratory test results were "significant and substantial reasons to find Parra's testimony less than completely credible."). *See also Burch*, 400 F.3d at 681 (stating lack of medical evidence "is a factor that the ALJ can consider in his credibility analysis.")

Second, the ALJ cited Plaintiff's failure to seek "treatment for his complaints of depression." (AR at 23.) "The ALJ is permitted to consider lack of treatment in his credibility determination."

1  *Burch*, 400 F.3d at 681. Thus, this was a sufficient reason for rejecting Plaintiff's testimony about his
2  mental impairment.

3  Third, the ALJ stated that Plaintiff's "activities of daily living indicate that he is able to clean,
4  do laundry, do all of his own personal care, exercise, grocery shop, and go for walks[,]" which
5  "activities are inconsistent with the alleged severity of the symptoms alleged." (AR at 23.) "The ALJ
6  was permitted to consider daily living activities in his credibility analysis." *Burch*, 400 F.3d at 681.
7  As the Ninth Circuit has explained, "if a claimant engages in numerous daily activities involving skills
8  that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon
9  making specific findings relating to those activities." *Id.* Thus, this evidence also supports the ALJ's
10 rejection of Plaintiff's subjective testimony about his symptoms.

11  In sum, the ALJ provided specific, clear and convincing reasons for rejecting Plaintiff's
12 subjective complaints about "the severity and intensity of the symptoms and limitations alleged in this
13 case." (AR at 22.) Plaintiff's argument to the contrary does not warrant reversal or remand.

14 **C.    Analysis of Past Relevant Work**

15  The next area Plaintiff takes issue with is the ALJ's assessment of Plaintiff's past relevant
16 work. Plaintiff argues the ALJ's analysis of Plaintiff's past relevant work was incorrect, as was the
17 ALJ's analysis of Plaintiff's ability to perform that work.

18  At step four of the disability determination process, "claimants have the burden of showing
19 that they can no longer perform their past relevant work." *Pinto v. Massanari*, 249 F.3d 840, 844 (9th
20 Cir. 2001) (citations omitted). "Although the burden of proof lies with the claimant at step four, the
21 ALJ still has a duty to make the requisite factual findings to support his conclusion. This is done by
22 looking at the 'residual functional capacity and the physical and mental demands' of the claimant's
23 past relevant work." *Id.* at 844-45 (citations omitted).

24  Here, the ALJ described Plaintiff's past relevant work as "a laborer and agricultural laborer,
25 mechanic, and driver[,]" but focused on Plaintiff's past relevant work as a driver. (AR at 23.) Based
26 / / /
27 / / /
28 / / /

1  on Plaintiff's testimony, the ALJ classified driving as "light exertional work." (*Id.*)[2] Plaintiff disputes
2  this characterization, and asserts that driving, as he described it, is medium exertional work.

3  During the hearing before the ALJ, Plaintiff's counsel asked Plaintiff about his previous
4  employment as a "chauffer [sic]." (AR at 37.)[3] When asked to describe what he did as a chauffer,
5  Plaintiff stated: "I, I had a dump truck, and then, I would distribute fertilizers in the fields." (*Id.* at 37-
6  38.)

7  As Plaintiff points out, the Dictionary of Occupational Titles ("DOT") identifies "Liquid-
8  Fertilizer Servicer" as one type of truck driver, and explains that this is "Medium Work." *See* DOT
9  906.683-014. Defendant argues the DOT's explanation is not binding because the ALJ relied on
10 Plaintiff's testimony in identifying Plaintiff's past relevant work. However, Plaintiff's description of
11 his past relevant work as a driver fits squarely within the DOT's definition of "Liquid-Fertilizer
12 Servicer." Thus, under the DOT or Plaintiff's testimony, his past relevant work should have been
13 classified as medium exertional work, not light exertional work. The ALJ's finding to the contrary
14 was erroneous, and warrants remand.

15 **D.    Reversal or Remand?**

16 In light of the errors identified above, Plaintiff urges the Court to reverse the ALJ's decision
17 and remand his case for an award of benefits. Defendant argues the case should be remanded for
18 further proceedings.

19 The Ninth Circuit has set out the following test for:

20 when evidence should be credited and an immediate award of benefits directed: "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2)
21 there are no outstanding issues that must be resolved before a determination of

---

[2] Title 20 C.F.R. § 404.1567(b) states: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

[3] In English, a "chauffeur" is defined as "a person employed to drive a motor vehicle." http://www.merriam-webster.com/dictionary/chauffeur (last visited June 22, 2010). However, in Spanish, a "chófer" simply refers to a "driver". http://www.spanishdict.com/translate/chófer (last visited June 22, 2010). Plaintiff's hearing was conducted through a Spanish interpreter, (*see id.* at 27), and it appears the use of "chauffeur" in the transcript refers to the Spanish definition rather than the English definition.

        disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited."

*Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (quoting *Smolen*, 80 F.3d at 1292). *See also Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) ("an award of benefits is mandatory where the ALJ's reasons for rejecting the claimant's testimony are legally insufficient and it is clear from the record that the ALJ would be required to determine the claimant disabled if he had credited the claimant's testimony."); *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002) (citing *Smolen*, 80 F.3d at 1292) (setting out *Smolen*'s three-part test). This test recognizes "'the importance of expediting disability claims.'" *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (quoting *Ghokassian v. Shalala*, 41 F.3d 1300, 1303 (9th Cir. 1994)). It also furthers "the primary purpose of the Social Security Act, 'to give financial assistance to disabled persons because they are without the ability to sustain themselves.'" *Id.* (quoting *Gamble v. Chater*, 68 F.3d 319, 322 (9th Cir. 1995)).

        In this case, there is no dispute the ALJ failed to give any reasons, much less legally sufficient reasons, for rejecting the testimony of Dr. Valette. Accordingly, Dr. Valette's testimony should be credited on remand.

        The second element asks whether there are any outstanding issues that must be resolved before a disability determination can be made. Based on the ALJ's assessment that Plaintiff is only capable of "light work," and the Court's determination that Plaintiff's past relevant work consisted of "medium work," it appears Plaintiff cannot perform his past relevant work. Because the ALJ's conclusion was to the contrary, he did not address the final step of the disability determination process, namely whether Plaintiff can perform any other work. This issue must be resolved before a disability determination can be made.

        Plaintiff argues the Court should make that determination based on the evidence in the record and the Medical-Vocational Guidelines. Specifically, Plaintiff relies on Guideline Rule 202.09, which calls for a finding of disability for persons whose residual functional capacity is limited to light work as a result of a severe medically determinable impairment and who are (1) "closely approaching advanced age," (2) "illiterate or unable to communicate in English," and (3) whose previous work experience was "unskilled." *See* 20 C.F.R. § 404, Subpt. P, App. 2. There is no dispute that Plaintiff

meets the first two requirements. (*See* AR at 31) (reflecting Plaintiff's birth date of July 7, 1953, and that he cannot read English). The only remaining issue is whether Plaintiff's previous work experience was "unskilled." Plaintiff argues his previous work experience was "unskilled," but the record is in conflict on this issue. (*Compare* AR at 51 (describing Plaintiff's past relevant work as "skilled") *with* AR at 54 (reflecting past relevant work as "unskilled" or "semi skilled")). In light of this conflict, it is unclear whether the ALJ would be required to find Plaintiff disabled.

Although the ALJ failed to give legally sufficient reasons for rejecting Dr. Valette's opinion, and erred in his analysis of Plaintiff's past relevant work, there are issues to be determined on remand, and it is unclear whether the ALJ would be required to find Plaintiff disabled. Accordingly, the Court finds it appropriate to remand Plaintiff's case for further proceedings consistent with this opinion rather than remanding for an award of benefits.

## III.
## CONCLUSION

For the reasons discussed above, Plaintiff's motion for summary judgment is **GRANTED**, and Defendant's cross-motion for summary judgment is **DENIED**. The decision of the ALJ is **REVERSED** and this case is REMANDED for further proceedings consistent with this opinion. The Clerk shall enter judgment accordingly, and terminate this case.

**IT IS SO ORDERED**.

DATED: June 24, 2010

_____
HON. DANA M. SABRAW
United States District Judge